J-S09022-22

2022 PA Super 113

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TROY ANTHONY ROBINSON | : | No. 1127 EDA 2021 |

Appeal from the PCRA Order Entered May 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005169-2012

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY STEVENS, P.J.E.: **FILED JUNE 27, 2022**

Appellee Troy Anthony Robinson ("Robinson"), a suspect in a robbery in progress, aimed a gun at Philadelphia Police Officer Timothy Fitzgibbon, a trained police officer for eleven years who was responding to the robbery.

Robinson did so in broad daylight on a clear day, only ten feet away from Officer Fitzgibbon. There is no dispute Officer Fitzgibbon had a clear view of Robinson and unequivocally identified Robinson as the suspect. Fellow police officers responded within seconds of Officer Fitzgibbon's radio call, and Sergeant James Hawe also clearly identified Robinson as the suspect.

Despite overwhelming evidence of Robinson's guilt, the Majority directs a new trial finding Robinson's trial counsel ineffective for failure to present

_____

[*] Former Justice specially assigned to the Superior Court.

expert testimony regarding eyewitness identification. As such, I respectfully dissent in this appeal filed by the Commonwealth and would reverse the PCRA court's grant of PCRA relief.

This Court has previously set forth the facts underlying this appeal as follows:[1]

> On November 24, 2011, at approximately 12:30 PM, [Officer Fitzgibbon] of the Philadelphia Police Department responded to a radio call regarding a robbery in progress on Greeby Street in the Oxford Circle section of Philadelphia, PA. 10/23/2014 Notes of Testimony (N.T.) at 29. The radio call contained an accompanying description of four (4) African American males who were believed to be involved in the robbery. ***Id.*** While en route to the scene in his marked police patrol vehicle, Officer Fitzgibbon first observed [Robinson] walking southbound on Cranford Street. ***Id.*** at 30. Officer Fitzgibbon's attention was initially drawn to [Robinson] due to [Robinson's] close proximity to the location of the recent robbery.[2] ***Id.*** As Officer Fitzgibbon drew closer to [Robinson], he observed [Robinson] conversing on his cellular phone. ***Id.*** at 33. It is at this time that Officer Fitzgibbon overheard [Robinson] repeatedly state "it's going down." ***Id.***[1]
>
> ---
> 1 Officer Fitzgibbon testified that he parked his car at an angle with his "driver's door...facing [Robinson] as [Robinson] walked toward" him. N.T., 10/23/14, at 31. He was "ten feet maybe, give or take a foot or two" away from [Robinson]. ***Id***. at 32. The weather was clear, it was daylight, and the officer's window was down. ***Id***. at 28, 32–33. Officer

---

[1] As the Majority indicates, following his conviction by a jury on the charges of aggravated assault, possession of a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime ("PIC"), and by the trial court of possession of a firearm by a prohibited person *via* a bifurcated waiver trial, Robinson filed a direct appeal from his judgment of sentence. In affirming on direct appeal, this Court set forth the facts as set forth *infra*.

[2] As the Majority indicates, the trial transcript reveals that, when Officer Fitzgibbon first saw Robinson, there were two Hispanic males, who were talking to each other, standing less than five feet from Robinson. There were no other pedestrians in the area.

Fitzgibbon subsequently testified that initially, the distance was a bit further. *Id*. at 47–48.

Due to the nature of [Robinson's] statement, and in response to [the] report of a very recent robbery nearby, Officer Fitzgibbon, while still inside his patrol vehicle, asked [Robinson] if [Robinson] could speak with him for a moment. *Id.* at 34. In response to this request, [Robinson] began to walk towards Officer Fitzgibbon and proceeded to retrieve a firearm from a pocket located on the left side of his body. *Id.* 34–35. [Robinson] then raised the firearm and pointed it in the direction of Officer Fitzgibbon and his vehicle. *Id.* at 35. With [Robinson] now closing in on Officer Fitzgibbon, Officer Fitzgibbon immediately "threw" his patrol vehicle into "Drive" and very quickly advanced his patrol vehicle approximately three (3) to four (4) car lengths up Passmore Street, away from [Robinson]. *Id.* at 37–38. At this time, Officer Fitzgibbon glanced in his rearview mirror and observed [Robinson] standing in the street behind him with the firearm still pointed towards his patrol vehicle. *Id.* at 38. Believing that he had just heard [Robinson] discharge the firearm, Officer Fitzgibbon proceeded up Passmore Street at a high rate of speed. *Id.* at 38–39.[2]

2 This court notes that the record reveals that the Commonwealth did not produce any evidence which conclusively established that [Robinson] did, in fact, discharge the firearm in question.

Upon reaching the top of the block, Officer Fitzgibbon came in contact with other Philadelphia Police Officers and provided a description of [Robinson], which description was then broadcast over police radio. *Id.* at 41, 83. Shortly thereafter, Officer Fitzgibbon proceeded around the block back to Passmore Street whereupon he encountered [Robinson];[3] by this time [Robinson] had been stopped by Philadelphia Police Sergeant James Hawe[.] *Id.* at 42. Sergeant Hawe stopped [Robinson] because of [Robinson's] resemblance to the flash information received over

[3] As the Majority indicates, the trial transcript reveals it took Officer Fitzgibbon approximately one minute and a half to loop back around in his vehicle to Passmore Street.

the radio via Officer Fitzgibbon.[4]  ***Id.*** at 83.  Upon exiting his patrol vehicle, Officer Fitzgibbon pointed at [Robinson] and stated, "that's him."  ***Id.*** at 88.  As a result of Officer Fitzgibbon's unequivocal identification, [Robinson] was placed in police custody.  ***Id.***

A search of the area was then conducted by Officer Fitzgibbon and his brother officers for a firearm and any fired cartridge casings.  ***Id.*** at 49.  During the search, Officer Fitzgibbon observed a firearm underneath a motor vehicle.  ***Id.*** This firearm was located approximately five (5) feet from where Sergeant Hawe had stopped [Robinson].  ***Id.*** at 89.  Officer Fitzgibbon subsequently identified the firearm as the black semiautomatic handgun that had been wielded by [Robinson].  ***Id.*** at 51–52. The Philadelphia Police Crime Scene Unit photographed the firearm.  ***Id.*** at 93.  Upon further examination of the firearm, it was determined that the firearm was loaded with ten (10) live cartridges in the magazine.  ***Id.*** at 150.

***Commonwealth v. Robinson***, No. 807 EDA 2015, 2016 WL 6820530, at 1-2 (Pa.Super. Nov. 18, 2016) (unpublished memorandum) (quoting Trial Court Opinion, 2/12/16, at 3–4) (footnotes in original and renumbered) (footnotes added).

Following his unsuccessful direct appeal, Robinson filed a first timely PCRA petition averring trial counsel was ineffective for failing to call an identification expert to testify regarding the alleged unreliability of the victim's (Officer Fitzgibbon's) identification of Robinson as the person who pointed the firearm at him.  In granting Robinson relief, the PCRA court examined

---

[4] The trial transcript reveals Sergeant Hawe responded to Officer Fitzgibbon's flash information within twenty or thirty seconds, he did not see anyone else present on the block, and anyone leaving the area would have to pass by police officers.

***Commonwealth v. Walker***, 625 Pa. 450, 92 A.3d 766 (2014), and ultimately concluded trial counsel was ineffective in failing to call an identification expert, thus granting Robinson a new trial.

As the Majority suggests, while it had long been the law of Pennsylvania that such expert testimony was not admissible, our Supreme Court altered the law shortly before Robinson's trial, thus allowing for such expert testimony. ***See id.*** Specifically, in ***Walker***, our Supreme Court recognized the potential advantages of expert testimony in the eyewitness arena and held that such testimony was no longer *per se* inadmissible. ***Id.*** at 792-93.

In reaching this conclusion, the ***Walker*** Court expressly rejected reliance on cross-examination and closing argument alone as sufficient to convey the relevant eyewitness factors to the jury. ***Id.*** at 786. Henceforth, expert eyewitness testimony would be admissible, at the discretion of the trial court, in cases where the Commonwealth's proof of identity was solely or primarily dependent upon eyewitness testimony. ***Id.*** at 787-88.

In the case *sub judice*, even assuming the testimony of an expert on eyewitness identification would have been admissible and trial counsel lacked a reasonable basis for his inaction in seeking to present such expert testimony, Robinson must still demonstrate that he was prejudiced by the lack of such expert testimony. ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 532 (2009). That is, he must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings

would have been different." *Id.* Robinson failed to meet his burden in this regard.

The victim in this case, Officer Fitzgibbon, a trained police officer for eleven years, viewed the suspect before, during, and after the suspect pointed a gun at him. N.T., 10/23/14, at 27. There is no dispute the officer faced the suspect, the suspect stood approximately ten feet from the officer, it was daylight, and the weather was clear. There is also no dispute that at the scene, and all times thereafter, Officer Fitzgibbon unequivocally identified Robinson as the suspect.

However, Officer Fitzgibbon's eyewitness testimony and identification of Robinson was not the sole evidence in this case. Rather, Officer Fitzgibbon's fellow officers, including Sergeant Hawe, responded to the scene. Sergeant Hawe testified he responded to the scene within twenty or thirty seconds of Officer Fitzgibbon's radio call. *Id.* at 82. Robinson was stopped by Sergeant Hawe five feet from the location where the suspect had pointed a gun at Officer Fitzgibbon. *Id.* at 42.

Moreover, the police discovered a firearm underneath a vehicle five feet from where Sergeant Hawe stopped Robinson. *Id.* at 89. Further, while there were two Hispanic men initially on the block when the suspect shot at Officer Fitzgibbon, there is no evidence that any other pedestrians were on the block at any other time from when the suspect shot at Officer Fitzgibbon and Sergeant Hawe arrested Robinson. *Id.* at 44. Officer Fitzgibbon denied seeing

the flow of any pedestrian traffic in this area, and Sergeant Hawe testified he never saw anyone other than Robinson on the block. *Id.* at 44, 82. Moreover, Sergeant Hawe noted fellow officers were stationed at the end of the block, and the police observed no person fleeing the scene. *Id.* at 82-85. Sergeant Hawe specifically testified that if anyone had tried to leave the scene, they would have needed to go by police officers. *Id.* at 85-86.

Based on the overwhelming evidence of Robinson's guilt, I disagree with the Majority that, but for trial counsel's failure to present expert testimony of eyewitness identification, the outcome of Robinson's trial would have been different. *See Johnson*, *supra*.

This is not a case where the sole evidence of the defendant's guilt was based upon eyewitness testimony. Rather, Robinson's identity as the perpetrator was established by numerous facts, circumstances, and inferences pointing to him which corroborated the eyewitness testimony.

For example, there is Sergeant Hawe's testimony that he responded within seconds to the scene, discovered only Robinson on the block, and the handgun was found under a motor vehicle within five feet of Robinson's location. Further, police officers were stationed at the end of the block such that any person who fled the scene would have been observed by the police.

This is not a case where the "concerns regarding wrongful convictions based on the vagaries of eyewitness testimony that undergird *Walker*" are present. *Commonwealth v. Thomas*, 654 Pa. 378, 215 A.3d 36, 50 (2019).

Given the strength of the evidence presented against Robinson and the limited utility of the proposed expert's testimony, Robinson cannot and did not establish that he was prejudiced by trial counsel's failure to present expert testimony regarding eyewitness identification.[5]

This is a case where a defendant put the safety of a police officer at risk and was found guilty on much more than eyewitness testimony. Clearly, Robinson cannot show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Accordingly, as I would reverse the PCRA court's grant of PCRA relief, I respectfully dissent.

---

[5] The fact the jury asked identity-related questions, engaged in "a long deliberation," Majority Opinion at 23 n.9, and subsequently found Robinson guilty illustrates that the jury gave careful consideration to the identity issues, and therefore, the jury's verdict should not be set aside. Robinson has failed to meet his burden of showing prejudice in light of the thorough jury deliberations and other evidence as indicated.