J-S23007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAMSIDDIN Q. SALLAM | : | |
| | : | |
| Appellant | : | No. 1596 EDA 2022 |

Appeal from the PCRA Order Entered May 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006240-2011

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAMSIDDIN Q. SALLAM | : | |
| | : | |
| Appellant | : | No. 1597 EDA 2022 |

Appeal from the PCRA Order Entered May 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006241-2011

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED SEPTEMBER 15, 2023**

Shamsiddin Sallam appeals from the Philadelphia County Court of Common Pleas' order denying his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, after an evidentiary hearing. Although the PCRA court found the untimely petition met an exception to the PCRA's time bar, it ultimately concluded the petition was

meritless. We find no error in either of the PCRA court's conclusions, and we therefore affirm.

This Court provided a more detailed factual account of this case on direct appeal, but only a brief summary is necessary for the purposes of this appeal. *See Commonwealth v. Sallam*, 3403 EDA 2012 (Pa. Super. filed October 10, 2013) (unpublished memorandum). Sallam was charged with one count of first-degree murder each for the killing of Harry Williams and the killing of Gregory Jarvis in 2009. The men had been shot in Williams's apartment in the boarding house where Williams was staying, and police recovered eight cartridge casings from the apartment that were later determined to have been fired from a single firearm.

The matter proceeded to a jury trial and the jury convicted Sallam of two counts of first-degree murder and related offenses. The trial court imposed the mandatory sentence of life imprisonment for each of the first-degree murder convictions, along with concurrent lesser sentences for the related offenses.

Sallam appealed to this Court, raising eight claims of error. This Court rejected all eight claims as meritless, and affirmed the judgment of sentence. *See id.* Our Supreme Court denied Sallam's petition for allowance of appeal in 2014. Sallam filed a timely first PCRA petition, which the PCRA court denied. This Court affirmed the denial of the PCRA petition, and the Supreme Court denied Sallam's petition for allowance of appeal in 2018.

Sallam filed a *pro se* second PCRA petition in March 2021, and appointed counsel eventually filed an amended petition. In the petitions, Sallam essentially asserted he was entitled to relief based on newly-discovered evidence in the form of a statement by Williams's sister, Miriam Boeri. He contended the Commonwealth committed a **Brady**[1] violation by failing to disclose this statement.

The PCRA court held a hearing on the petition, which took place on February 18, 2022 and May 13, 2022.[2] At the February hearing, Sallam called Boeri to testify. Boeri maintained that she and Williams had spoken on the phone a few days before his murder, and that Williams told her some men with guns came to the boarding house where he was staying either on the day of their conversation or the day before. **See** N.T., 2/18/2022, at 8. According to Boeri, Williams told her the men were looking for a man named "Snap," a person Williams had known from prison and had also provided with his address. **See id.** at 8-9. "Snap" was Sallam's nickname. **See id.** at 12. The men left the apartment when they were unable to find "Snap."

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

[2] The notes of testimony from the hearings were not in the certified record originally sent to this Court. Of course, it is Sallam's burden as the appellant to ensure the certified record includes what is necessary for this Court to resolve his appeal. Nonetheless, upon informal inquiry, our Prothonotary was able to secure the notes of testimony from both hearings and those notes are now included in the certified record.

Boeri also testified that she spoke with Detective George Pirrone from the Philadelphia Police Department within one or two days of her brother's murder. She claimed she told the detective what Williams had told her about the armed men coming to his apartment looking for "Snap" in the days preceding his murder. *See id.* at 9.

Boeri stated she also informed Assistant District Attorney ("ADA") Richard Sax about her phone conversation with Williams, and although she wanted to testify about that conversation, ADA Sax told her she could not. *See id.* at 10, 13. Boeri claimed ADA Sax also told her not to tell defense counsel or Sallam's family about the phone conversation, and maintained ADA Sax did not update her about the date of trial. *See id.* at 13.

The hearing was continued to May 13, 2022 and ADA Sax testified on that date. ADA Sax relayed that he had an initial conversation with Boeri after her brother's murder, a conversation ADA Sax then memorialized in a memo. He described the conversation with Boeri as "bizarre" and indicated it led him to question Boeri's credibility. *See* N.T., 5/13/2022, at 13-14. He maintained Boeri did not mention anything to him about her conversation with Williams regarding the armed men coming to Williams's boarding house either in their initial conversation, or in any of the follow-up conversations he had with Boeri. *See id.* at 14, 15, 20.

ADA Sax also recounted that he had reviewed Detective Pirrone's file from the case. According to ADA Sax, the detective made a note that Boeri

had told him about a group of men who came to Williams's boarding house. *See id.* at 14. However, there was nothing in that note identifying who the men were specifically looking for or anything about the men being armed. *See id.* at 17, 37. The note was, ADA Sax opined, "of no moment either for or against the defendant." *Id.* at 26.

ADA Sax testified, however, that the information in Boeri's statement, *i.e.* armed men looking for Sallam at Williams's boarding house, as well as Williams knowing Sallam from prison and giving him his address, would have actually been helpful to the Commonwealth's case. *See id.* at 20-21, 28, 33. ADA Sax explained it would have established that Sallam and Williams knew each other and Sallam knew where Williams lived. Nonetheless, ADA Sax testified that, even if Boeri had told him about Williams's statement, he could not have introduced Boeri's statement regarding what Williams had told her as it was hearsay. *See id.* at 18, 31.

Finally, ADA Sax stated he did inform Boeri of the trial date and that he intended to call her as a life-in-being witness. *See id.* at 18-19, 21-22. Before Boeri was called to testify, ADA Sax discussed her testimony with her. Boeri did not mention her phone conversation with Williams about the armed men at that time, but if she had, ADA Sax said he would have informed defense counsel. *See id.* at 25-26, 32. He continued to insist this evidence would have been inculpatory. *See id.* at 25, 30-33.

Following the hearing, the PCRA court denied Sallam's petition. Sallam filed a timely notice of appeal.[3] In his appeal, Sallam raises a single issue, essentially that the PCRA court erred by finding the Commonwealth did not commit a **Brady** violation by failing to disclose Boeri's statement regarding her phone conversation with Williams. This claim fails.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. **See Commonwealth v. Shaw**, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Benner,** 147 A.3d 915, 919 (Pa. Super. 2016).

Before we can review the merits of Sallam's claim, we must determine as an initial matter whether Sallam's instant PCRA petition was timely, as a petition's timeliness implicates our jurisdiction. **See Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014). A PCRA petition, including a second or subsequent one, must be filed within one year of the date that a petitioner's judgment of sentence became final. **See** 42 Pa. C.S.A. § 9545(b)(1). Here,

---

[3] The PCRA court's order denying the PCRA petition listed two trial court docket numbers. Sallam filed two separate notices of appeal from the order in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). This Court later granted Sallam's motion to consolidate the two cases.

Sallam's judgment of sentence became final in 2014 and this petition was not filed until 2021. As the trial court found, and nobody disputes, the petition is facially untimely.

However, this Court has jurisdiction to review a petition filed beyond the one-year time limit if the petitioner alleges and proves any one of the three statutory exceptions to the time-bar. **See** 42 Pa. C.S.A. § 9545(b)(1) (i)-(iii). One of those timeliness exceptions is the "newly-discovered facts" exception, which requires a petitioner to establish "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015) (citation omitted); 42 Pa C.S.A. § 9545(b)(1)(ii). A petition invoking one of the timeliness exceptions must be filed within one year of the date the claim could have first been presented. **See** 42 Pa. C.S.A. § 9545(b)(2).

Here, the PCRA court found Sallam had met the newly-discovered facts exception. It explained:

> On March 10, 2020, Boeri visited [Sallam] in prison as part of the Victim's Offender Dialogue Program. At that visit, [Sallam] learned for the first time about Williams'[s] statement to Boeri a few days before he was murdered. According to Boeri, she did not testify about this at trial or inform [Sallam's] attorney because ADA Sax said that she could [not] testify about it or tell [Sallam]. [Sallam] could not have discovered these facts through the exercise of due diligence and [he] filed the instant petition on March 1, 2021, less than a year after the period to raise a claim pursuant to the PCRA timeliness exception would have expired.

Trial Court Opinion, 6/13/2022, at 10.

We see no error in the PCRA court's determination.[4] However, the PCRA court then stated that even though Sallam had met the timeliness exception, he had failed to demonstrate his **Brady** claim warranted any relief. **See id.**

Sallam takes exception to this conclusion, and argues the Commonwealth violated **Brady** by deliberately withholding Boeri's statement that Williams had told her armed men had come to his apartment looking for "Snap." As Sallam acknowledges, a **Brady** violation consists of three elements: (1) suppression by the prosecution; (2) of evidence, whether exculpatory or impeaching, favorable to the defendant; and (3) to the prejudice of the defendant. **See Commonwealth v. Tedford**, 960 A.2d 1, 30 (Pa. 2008).

In finding Sallam had failed to establish a **Brady** violation here, the PCRA court determined Sallam had not shown that the Commonwealth suppressed Boeri's statement or that the statement was exculpatory. The court explained:

> [Sallam's] claim fails because he cannot show that the Commonwealth suppressed Williams'[s] statement. Based on the evidence put forth at the evidentiary hearings, the only information that the Commonwealth had regarding Williams'[s] statement prior to and during trial was that a group of men came to Williams'[s] boarding house searching for an unknown individual days before the shooting. This Court does not find

---

[4] The PCRA court also found Sallam had met the "governmental interference" exception to the timeliness requirement found at 42 Pa. C.S.A. § 9545(b)(1)(i). However, a petitioner only needs to establish that he has met one of the three statutory exceptions, so it is unnecessary for us to also address this exception.

Boeri's testimony that she told Detective Pirrone and ADA Sax about armed men searching for "Snap" credible. Quite the opposite, in fact, as this Court found Boeri's testimony to be incredible. There was no evidence presented to this Court which corroborated her testimony. Boeri made clear her personal frustration with the police and the quality of their investigation. Boeri admitted that she was upset because she felt she was being ignored, mistreated, and intimidated by detectives. She also stated she was angry [Sallam] received a life sentence. As the Commonwealth did not have the information about the armed men or that they were searching for [Sallam], this information could not have been suppressed.

[Sallam] also fails to establish that the allegedly suppressed evidence was exculpatory. The fact that armed men came to Williams'[s] boarding house looking for [Sallam] days before the shooting does not make it any less likely that [Sallam] shot Williams and Jarvis. Williams'[s] statement was actually inculpatory as it established that [Sallam] and Williams knew each other, and that [Sallam] was familiar with the address where the shooting occurred. The evidence at trial also showed that there was only one shooter as all projectiles and fired cartridge casings were found to have been fired from the same gun and video of the boarding house showed Jarvis entering with another individual with the same physical characteristics as [Sallam] before the shooting occurred and only the perpetrator leaving afterward.

Trial Court Opinion, 6/13/2022, at 11 (citation to notes of testimony omitted).

Sallam does not directly challenge the PCRA court's determination that the Commonwealth did not suppress Boeri's statement. Sallam continues to claim Boeri told Detective Pirrone and ADA Sax that Williams had told her that armed men had come to his apartment looking for "Snap."

However, as the Commonwealth points out, the PCRA court explicitly stated it had made a credibility determination in that it did not believe Boeri's testimony in this regard. And we agree with the Commonwealth that this credibility determination is supported by the record, and we are therefore

bound by it. *See Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) (providing that credibility determinations are for the PCRA court to make and reviewing courts are bound by those determinations when they are supported by the record). Based on this credibility determination, the PCRA court concluded the Commonwealth did not even have the evidence Sallam claims Boeri provided, and as such, could not and did not suppress it. We find no error in this conclusion.

As for the PCRA court's determination that the evidence was not favorable to Sallam, Sallam claims only that the evidence would have likely prompted defense counsel to investigate potential other suspects. The Commonwealth counters:

> This claim is not supported by reasoning that explains why men looking for [Sallam] would serve as suspects in a shooting that was determined to be committed with one firearm. There is no explanation for how this refutes any of the evidence presented at trial. In fact, [as discussed above], the [PCRA] court properly found that the evidence on its face was inculpatory.

Commonwealth's Brief at 15. We agree Sallam has also not shown the PCRA court erred in finding the evidence Sallam alleges the Commonwealth suppressed was favorable to him.

In the end, Sallam has failed to show the PCRA court erred by finding his *Brady* claim does not provide him with any basis for relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2023