J-S07028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERTO BATTLE | : | |
| | : | |
| Appellant | : | No. 1005 MDA 2023 |

Appeal from the PCRA Order Entered June 28, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004590-2017

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: MAY 16, 2024**

Roberto Battle appeals from the order denying his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

This Court has previously summarized the pertinent facts and procedural history as follows:

> On the evening of October 12, 2013, co-defendant David Nealy drove [Battle] to Outsiders Bar in Wilkes-Barre, Pennsylvania, in a silver Mercedes Benz sedan ("the sedan"). Earlier that weekend, Nealy had introduced [Battle] to an Outsiders Bar security person as his "shooter."
>
> In the early morning of October 13th, security removed [Battle] from the bar for fighting with another patron.  Soon after, security manager Prince Rodriguez saw [Battle] sitting on the hood of the sedan.

---

[*] Retired Senior Judge assigned to the Superior Court.

Nealy left the bar a short time later and drove [Battle] to Shakim Varick's house, where [Battle] retrieved a handgun loaded with Hornady Zombie 9mm ammunition. The pair then drove back toward Outsiders Bar and, as they passed the bar, [Battle] fired the handgun several times out of the front passenger's window toward a group of bar security personnel and patrons.

One of the gunshots hit and killed Michael Onley ("the Victim"), a bar patron. Two members of bar security, Rodriguez and Dalair Edwards heard gunshots and saw muzzle flashes coming from a passing silver sedan. Rodriguez identified the vehicle as the sedan he saw [Battle] sitting on earlier in the evening.

Immediately following the shooting, Nealy drove [Battle] to [Battle's] friend's house. Referring to Outsiders Bar, [Battle] told a group at the house that he "shot the place up." The pair then drove back to Varick's house, where [Battle] told Varick that he and Nealy "did a drive-by" with Varick's gun.

Police recovered nine Hornady Zombie 9mm shell casings from the road outside the bar and confirmed that a Hornady Zombie 9mm bullet killed the Victim. They also found gunshot residue in the area of the sedan's front passenger seat.

Police arrested [Battle] and Nealy and charged them with [first-degree murder and conspiracy]. A joint trial commenced on December 11, 2018. Relevantly, Dr. Gary Ross, a forensic pathologist, testified that the Victim died as a result of the gunshot wound to the head. Co-defendant Nealy also testified and admitted to driving the sedan past Outsiders Bar as [Battle] fired a gun out the window.

On December 17, 2018, the jury found both defendants guilty of all charged offenses. On January 31, 2019, the court sentenced [Battle] to a mandatory life sentence for the First-Degree Murder conviction and a consecutive sentence of 240 to 480 months' imprisonment for the Conspiracy conviction.

*Commonwealth v. Battle*, 237 A.3d 1086 (Pa. Super. 2020) (non-precedential decision at 1-3).

Battle filed a timely post-sentence motion, which the trial court denied. Battle appealed. On June 25, 2020, this Court rejected Battle's sufficiency challenges and affirmed his judgment of sentence. *Id*. On October 14, 2020, our Supreme Court denied Battle's petition for allowance of appeal. *Commonwealth v. Battle*, 240 A.3d 107 (Pa. 2020).

Battle filed a timely *pro se* PCRA petition on August 9, 2021. The PCRA court appointed counsel and set a hearing date. After being granted two extensions, PCRA counsel, on November 2, 2022, filed a motion to withdraw and a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On January 27, 2023, the PCRA court denied counsel's request.

Ultimately, a PCRA hearing was held on January 30, 2023. At that time, PCRA counsel indicated to the court that "there's no new evidence that [Battle] want[ed] to present today. It is basically all legal argument." N.T., 1/30/23, at 4. The PCRA court granted Battle's request to file a brief. Thereafter, Battle filed a supporting brief and the Commonwealth filed a responsive brief. By order entered June 28, 2023, the PCRA court denied Battle's petition. Battle filed a timely *pro se* notice of appeal. Following a *Grazier*[1] hearing, the PCRA court appointed present counsel. Both Battle and the PCRA court have complied with Pa.R.A.P. 1925.

---

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

New PCRA counsel filed a merit brief raising the following issues on appeal:

1. Whether the [PCRA] court erred in denying [Battle's] PCRA petition where [Battle] established all factors of ineffective assistance of counsel to support his claim - specifically, that trial counsel was ineffective as related to the presentation/exclusion of evidence at trial (including the failure by trial counsel to object to the use by the prosecution of [a] highly prejudicial nickname [for Battle] throughout trial)?

2. Whether the [PCRA] court erred in denying [Battle's] PCRA petition regarding his claims of ineffective assistance of counsel related to the failure by trial counsel to seek to sever [Battle's] trial from that of [Battle's] co-defendant, resulting in extreme prejudice to [Battle], as evidence related to [his] co-defendant was used against/attributed to [Battle] at trial?

3. Whether the [PCRA] court erred in denying [Battle's] PCRA petition regarding the **Brady** challenge raised by [Battle] (specifically, that the prosecution was aware of inconsistent/untruthful testimony as related to one of its witnesses but nevertheless proceeded to offer the witness testimony, resulting in extreme prejudice to [Battle])?

Battle's Brief at 3-4.

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Webb**, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing **Commonwealth v. Barndt**, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

Battle's first two issues raise a claim regarding trial counsel's alleged ineffectiveness. To obtain relief under the PCRA premised on a claim that

counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.*

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

> The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

- 5 -

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

Before addressing the issues Battle raises on appeal, we first note Battle did not present testimony from trial counsel at the evidentiary hearing. It is petitioner's burden to produce counsel at a PCRA evidentiary hearing in order to meet his burden of proof that his claims warrant relief. *Commonwealth v. Jones*, 596 A.2d 885, 888-89 (Pa. Super. 1991). Thus, we could affirm the denial of Battle's ineffectiveness claims on this basis alone. Nonetheless, we will consider Battle's first two issues to the extent they are properly before us.

In support of his first ineffectiveness claim, Battle asserts that he "was referred to by the prosecution by [a] highly prejudicial nickname ([he] was referred to as "Ruthless" and implying that he was a ruthless murderer or killer) on more than one hundred, sixty occasions during trial." Battle's Brief at 7. While he acknowledges that courts have held the prosecution's use of nicknames by which a criminal defendant is generally known is permissible, "the Supreme Court has found that the use of a defendant's nickname can be so prejudicial as to require a new trial." Battle's Brief at 10 (citing *U.S. v. Farmer*, 583 F.3d 131 (2d Cir. 2009)).[2] Battle further asserts that trial

---

[2] Our reading of *Farmer* reveals no refence to the United States Supreme Court's decisions in cases involving a defendant's nickname, but rather, only a discussion of pertinent decisions in the second, as well as other federal circuits.

counsel "should have sought, and the court should have prevented (or limited), such references." ***Id.*** at 7. According to Battle, "[b]oth individually and concomitantly, such actions and omissions were clear evidence constituting ineffective assistance of counsel." ***Id.***

The PCRA court found no merit to Battle's claim:

> Here, [Battle] asserted to the PCRA court that his trial counsel wrongly failed to object to the use of his nickname, "Ruthless." A review of the trial transcript confirms that [Battle] was referred to by the nickname "Ruthless," and that his trial counsel did not object to these references. Counsel's failure to object, however, did not amount to ineffective assistance that so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> As the record reflects, the Commonwealth elicited testimony from multiple witnesses who knew, referred to, and identified [Battle] not by the name Roberto, but by the nickname "Ruthless." Indeed, at least one witness testified that she did not even know [Battle's] real name, and *only* knew him by his nickname. Thus, the use of the nickname was consistent with how [Battle] was referred to by the persons who knew and interacted with him. Additionally, as part of their strategy at trial, [Battle] and his co-defendant attempted to implicate a third party, Shakim Varick, in the crimes for which they were charged, and [they] did so in part by emphasizing Varick's nickname[,] "Killer." Further, as set forth fully in [the trial court's] Rule 1925(a) opinion in support of affirmance on direct appeal, the evidence presented by Commonwealth, irrespective of the use of [Battle's] nickname, was clearly sufficient to support [Battle's] convictions, which were affirmed on direct appeal by the Superior Court as noted above.

- 7 -

PCRA Court Opinion, 1/31/23, at 3-5 (citation omitted).[3]  Thus, the PCRA court concluded that Battle failed to prove, by a preponderance of the evidence, the tri-partite test for ineffectiveness.

Our review of the record supports the PCRA court's conclusions. Although we did not count to determine if Battle correctly cites the number of references to his nickname in the trial transcript, we note he does not argue these references in context.  Our review of the record amply supports the PCRA court's conclusion that the majority of references to "Ruthless" were made by Commonwealth witnesses who knew him by that name.  Moreover, the police officers who testified did not use this nickname and the Commonwealth did not emphasize this nickname in either its opening or closing arguments to the jury.  Thus, Battle's first claim of ineffectiveness fails.

In his second issue Battle claims that PCRA court erred in denying his claim that trial counsel was ineffective for failing to seek to sever his trial from that of his co-defendant.  The PCRA court found this claim waived because Battle "did not seek post-conviction relief on these grounds," but raised the claim for the first time in his Rule 1925(b) statement,  PCRA Court Opinion, 10/31/23, at 5.  Our review of the record confirms that Battle inappropriately

_____

[3] In a footnote, the PCRA court stated that it was limiting its discussion to trial counsel's actions regarding the use of Battle's nickname because Battle "did not specify any other evidence that was allegedly presented or excluded." PCRA Court Opinion, 10/31/23, at 3 n.3.  In his brief, Battle focuses his argument on this issue only with regard to the use of his nickname.  Thus, we also limit our inquiry accordingly.

raises the claim for the first time on appeal. Thus, it is waived.[4] **See generally**, Pa.R.A.P. 302(a).

In his third and final issue, Battle contends that the PCRA court erred in denying his claim that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963). Specifically, Battle asserts that the Commonwealth had reached a deal with Shakim Varick in exchange for Varick's testimony against him, that the Commonwealth failed to disclose evidence of this deal to the defense, and the Commonwealth failed to correct Varick's allegedly false testimony during trial. This claim does not entitle Battle to post-conviction relief for several reasons.

Initially, we note that a direct claim of a **Brady** violation is waived as the claim could have been raised by Battle in his direct appeal. **See** 42 Pa.C.S.A. § 9544(b). Moreover, as discussed below, the record supports the PCRA court's conclusion that Battle "did not prove . . . that the prosecution concealed evidence [in violation of **Brady**], or if such evidence was concealed, that [Battle] was prejudiced by the concealment." PCRA Court Opinion, 10/31/23, at 6.

_____

[4] We find no merit to Battle's argument that this claim was preserved because it was an "extension" of his first issue. **See** Battle's Brief at 11-12 ( explaining the jury would be confused by his nickname vis-à-vis his co-defendant's nickname). In addition, Battle's claim that their defenses were antagonistic because the each claimed the other committed the murder, is unsupported by the record. At trial, Battle did not claim that co-defendant Nealy shot the victim, but rather, he argued that Shakim Varick, consistent with Varick's nickname, was the "Killer."

At trial, Varick acknowledged that he was indicted on a federal charge and the Commonwealth asked him about a plea agreement, that he had already signed in that case. Varick also testified that, while he did not have a guaranteed sentence in exchange for his testimony in Battle's case, he acknowledged that he would benefit from his cooperation if he gave "substantial assistance." **See** N.T., 12/12/18, at 228. Both trial counsel and co-defendant's counsel cross-examined Varick regarding the parameters of this agreement. On appeal, he provides no specifics as to what exculpatory evidence the Commonwealth concealed. Instead, Battle makes the bare assertion that "the witness testimony of a key prosecution witness, Shakim "Killer" Varick, was elicited improperly," because the Commonwealth knew that Varick's trial testimony was "inconsistent and contradictory to previous statements to the police and testimony elicited under oath." Battle's Brief at 13-14. Battle does not identify any specific testimony in this regard. Thus, Battle's undeveloped claim would warrant no relief.

In sum, Battle's issues on appeal are either without merit or not properly preserved below. As Battle has not established that the PCRA court erred in denying his PCRA petition. We affirm the court's order denying Battle post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/16/2024