J-S09004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINICK BOOKER | : | |
| | : | |
| Appellant | : | No. 1064 EDA 2023 |

Appeal from the PCRA Order Entered March 30, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002555-2014

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JUNE 11, 2024**

Dominick Booker appeals from the Philadelphia County Court of Common Pleas' order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, after a hearing. Booker alleges the PCRA court erred by finding the Commonwealth did not violate **Brady v. Maryland**, 373 U.S. 83 (1963), when it failed to disclose an internal memo from the Commonwealth related to the testimony of Booker's co-conspirator, Dwayne Warren, at Booker's jury trial. Booker contends the memo establishes there was an agreement that the Commonwealth would not seek a mandatory second-strike sentence against Warren in exchange for Warren's testimony against Booker. Booker further maintains that he was not informed of this agreement. Based largely on the PCRA court's thorough

opinion, as well as the PCRA court's factual and credibility determinations which are supported in the record, and therefore are binding on us, we affirm.

The PCRA court recited the factual history provided by this Court on direct appeal. **See** Trial Court Opinion, 8/24/2023, at 1-2. In brief, Booker and Warren conspired to rob a drug dealer outside a bar in Philadelphia on October 12, 2013. Gunshots were exchanged during the attempted robbery. The security guard at the bar, Juan Rodriguez, heard the gunshots and after investigating, exchanged gunshots with the two robbers. The robbers, later identified as Booker and Warren, fled by car. The intended robbery victim also fled. Booker, Warren and Rodriquez sustained non-fatal injuries.

Booker was eventually indicted on multiple counts, including attempted murder, aggravated assault, conspiracy and three Violations of the Uniform Firearms Act ("VUFA"). He proceeded to a jury trial in March 2016.

Warren testified against Booker at his trial. During his testimony, Warren stated he had agreed to plead guilty to, *inter alia*, attempted murder for his role in the crime and to testify against Booker. He also agreed he had not been promised anything by the Commonwealth to do so. **See** N.T., 3/3/2016, at 75. Warren further maintained that he understood that, even with his testimony, he could still receive the mandatory minimum sentence, and that the Commonwealth had not agreed to forego seeking the mandatory sentence against him. **See id.** at 75-76. In addition to Warren, Rodriguez also

testified about the events on October 12, 2013. **See** N.T., 3/2/2016, at 101-138.

The jury found Booker guilty of, *inter alia*, aggravated assault, conspiracy and the three VUFA charges. The trial court sentenced him to an aggregate term of 16 to 50 years' imprisonment.

The PCRA court also detailed the procedural history following Booker's sentencing. **See** Trial Court Opinion, 8/24/2023, at 3-6. In short, this Court affirmed Booker's judgment of sentence on direct appeal. In doing so, we rejected Booker's claim that he was entitled to a new trial on the basis of after-discovered evidence, which was, according to Booker, the more lenient sentence Warren received of 11½ to 23 months' imprisonment. **See Commonwealth v. Booker**, 2700 EDA 2016 (Pa. Super. filed July 23, 2018) (unpublished memorandum). The Pennsylvania Supreme Court denied Booker's petition for allowance of appeal. Booker then filed a timely PCRA petition, which the PCRA court ultimately dismissed.

Booker filed a *pro se* notice of appeal from the dismissal of his PCRA petition and counsel was appointed. Booker argued trial counsel had been ineffective for failing to articulate in his post-sentence motion that there was an undisclosed plea agreement between Warren and the Commonwealth in exchange for Warren's testimony. During the pendency of the appeal, the Commonwealth found an internal sentencing memo related to Warren authored by then Assistant District Attorney ("ADA") Jennifer Leonardis, which

the Commonwealth believed had not been disclosed to Booker. In relevant part, the memo stated:

> There are no negotiations as to what [Warren] will get but the mandatory second-strike sentence is off the table.

Trial Court Opinion, 8/24/2023, at 4 (*quoting* Memo, 7/3/2015 (single page)),

Based on the Commonwealth's representations, this Court remanded the matter to the PCRA court for further proceedings. Specifically, we issued a judgment order remanding the case for the PCRA court to determine if there was an agreement between the Commonwealth and Warren, whether the sentencing memo was disclosed to Booker, and whether the memo was material or its nondisclosure prejudiced Booker. *See Commonwealth v. Booker*, 1068 EDA 2020, 2021 WL 5658475, at *1-*2 (Pa. Super. filed December 10, 2021) (unpublished judgment order).

Booker retained new counsel, who filed an amended PCRA petition. There, Booker argued the Commonwealth had violated *Brady* by failing to disclose the sentencing memo to Booker and counsel had been ineffective for not pursuing a *Brady* claim.

The PCRA court held an evidentiary hearing on February 3, 2023 and March 10, 2023. Three witnesses testified at the February 3, 2023, hearing. Glenn Gilman, Warren's plea counsel, testified for the defense. Meanwhile, Angel Flores, the Chief of the East Division of the Philadelphia District Attorney's ("DA") Office during the pendency of this case, as well as Amanda Hedrick, one of the prosecutors involved in Booker's and Warren's cases,

testified for the Commonwealth. The PCRA court gave a detailed account of each of these witness's testimony, *see* Trial Court Opinion, 8/24/2023, 9-14, which is supported by our own review of the record. We provide a summary of that detailed account here.

Attorney Gilman testified first. He reported he represented Warren in this matter and due to Warren's prior record, Warren was subject to a minimum sentence of ten years' imprisonment under the so-called Strike Two Law. *See* N.T., 2/3/2023, at 10. According to Attorney Gilman, he negotiated a verbal plea agreement with then-ADA Ashley Lynam, who was prosecuting Warren's case for the Commonwealth at the time. Pursuant to this verbal agreement, Attorney Gilman asserted, the Commonwealth would waive its right to proceed at Warren's sentencing under the Strike Two Law in exchange for Warren's testimony at Booker's trial. *See id.* at 9, 12. Attorney Gilman conceded that the agreement had not been reduced to writing. *See id.* at 13, 21.

Attorney Gilman testified that when he learned Attorney Lynam was leaving the DA's Office while Warren's case was pending, he sought Attorney Lynam's assurance that she would inform her successor about the verbal agreement the two had about not pursuing a two-strike sentence against Warren. *See id.* at 13-14.

On cross-examination, Attorney Gilman acknowledged Warren testified at his guilty plea hearing that he had not been promised anything by the

Commonwealth in exchange for his guilty plea. *See id.* at 21, 23. Attorney Gilman conceded he did not inform the court that there was, in fact, a verbal agreement for the Commonwealth to waive Warren's second strike at sentencing. *See id.* at 23.

Attorney Flores, who had supervised the various prosecutors assigned to Booker's and Warren's cases, testified next. Attorney Flores spoke to the DA's Office's general practices on pursuing second-strike mandatory minimum sentences. According to Attorney Flores, he could not recall a single instance in which the DA's Office proceeded with a second-strike sentencing during his five years as Chief. *See id.* at 51-52. He stated that the default position of the DA's Office at that time was not to seek a second-strike mandatory sentence. *See id.* at 57-58.

He explained that if a prosecutor wished to proceed with seeking a mandatory minimum sentence due to a second strike, that prosecutor would make a request to a supervisor and there would be an internal determination as to whether to proceed on the second strike at sentencing. *See id.* at 48-49, 59, 60-61. Attorney Flores also testified that a decision not to proceed on a second strike would not be reduced to writing, unless there was cooperation involved. *See id.* at 53. "If there was cooperation, that had to be in writing." *Id.*

Attorney Amanda Hedrick, who was ultimately the prosecuting ADA at Booker's trial, also testified. She recounted that she took over Booker's case

after Attorney Lynam left the office and was assigned to handle Booker's trial as well as the sentencing hearings for Booker and Warren. The PCRA court summarized Hedrick's testimony:

> [Attorney Hedrick] testified that when she came onto these cases, she was not aware of any prior agreements between the Commonwealth and Warren to waive his second strike. [Attorney] Hedrick also testified that she did not secure any such agreement herself. She explained that had there been a prior agreement, she would have expected it to be memorialized in a memorandum of agreement and included in Warren's trial file.

> ***

> At [ ] Warren's sentencing hearing, [Attorney] Hedrick stated that "pursuant to the agreements between counsel and the Commonwealth, this would typically be – it should be a second-strike case" but that "the Commonwealth did agree to waive the strike in this matter."

> When asked about these statements, [Attorney] Hedrick explained that the law allowed the Commonwealth to seek a mandatory sentence in [ ] Warren's case but that there had been an internal agreement [between her predecessors and their supervisors] in the East Division of the District Attorney's Office [that Warren's case was not one where the Office would] seek a second-strike sentence. She reiterated that despite her specific choice of words, she was not aware of any agreement between [Attorney] Gilman and the District Attorney's Office regarding [ ] Warren's sentence.

Trial Court Opinion, 8/24/2023, at 13-14 (citations to notes of testimony omitted; second full paragraph in original divided into two paragraphs).

The PCRA hearing was continued until March 10, 2023. On this date, three witnesses testified: Attorney Lynam and Attorney Leonardis testified for the Commonwealth, and Anne Fisher, who was the Chief of the East Zone for the Defender Association of Philadelphia from 2012-2018, testified for Booker.

Again, the PCRA court outlined their testimony in some detail, *see id.* at 15-17, which, again, is supported by our independent review of the record. We provide the following summary.

Attorney Lynam, the Attorney Gilman maintained had made the verbal agreement with him, testified first. She flatly denied she had reached a verbal agreement with Attorney Gilman to waive Warren's second-strike status in return for his testimony against Booker. *See* N.T., 3/10/2023, at 8. She insisted that, had she made any such agreement, it would have been reduced to writing and included on the file markings. *See id.* Those markings noted Warren had "proffered" and "verbally expressed intent to plead open." *Id.* at 9. The markings also stated that "no offer" had been made to Warren. *Id.*

The Commonwealth also presented the testimony of Attorney Leonardis, a former ADA who handled Warren's open guilty plea and authored the memo underlying Booker's *Brady* claim. Attorney Leonardis explained that she wrote the memo as an internal transfer memo to the succeeding ADA when Leonardis was leaving the DA's Office. *See id.* at 34. She further explained that the statement in the memo that the second strike was "off the table" was based on an internal decision within the DA's Office not to seek a second-strike sentence against Warren. *See id.* at 38-40. She maintained she was not aware of any agreement between the Commonwealth and Warren about waiving sentencing on a second strike in exchange for Warren's testimony against Booker. *See id.* at 34.

Booker then presented the testimony of Attorney Fisher, who was not familiar with Warren's specific case but who was called to testify about general practices of the Defender's Association at the relevant time. *See id.* at 50. According to Attorney Fisher, it was her experience that the Commonwealth would "absolutely" pursue a second-strike sentence where a defendant had not pled guilty but had instead been convicted at trial. *See id.* at 48. She also stated there were situations where defense attorneys and prosecutors would reach verbal agreements. *See id.* at 55. She testified, however, that she would want an agreement regarding the waiver of a second-strike sentence to be in writing. *See id.* at 50, 51.

On March 30, 2023, the PCRA court presented its factual findings. The court explicitly found the testimony of the Commonwealth's witnesses, Attorneys Lynam, Hedrick, Leonardi and Flores, to be credible. *See* N.T., 3/30/2023, at 9-10, 11. The court found the credible testimony of all three former ADAs supported a conclusion that there was no agreement between the Commonwealth and Warren for the Commonwealth to waive seeking second-strike sentencing against Warren in exchange for his testimony. *See id.* at 11.

At the same time, the PCRA court specifically found the testimony of Attorney Gilam was not credible as it was "hard to believe that an attorney would expose his client to this kind of potential ten-year sentence without making an agreement [in writing]." *Id.* at 10-11. The PCRA court therefore

concluded that no agreement between the Commonwealth and Warren existed and consequently, that there had been no **Brady** violation. It dismissed Booker's PCRA petition. **See id.** at 11.

Booker filed a notice of appeal. Both Booker and the PCRA court complied with Pa.R.A.P. 1925. Booker now raises these two issues on appeal:

1. Did the PCRA Court err and abuse its discretion, thus violating [Booker's] right to due process of law, when it found that there was no agreement between the Commonwealth and counsel for Warren?

2. Did the PCRA Court err and abuse its discretion, thus violating [Booker's] right to due process of law, when it alternatively found that if there was an agreement, its non-disclosure was not material to [Booker's] conviction?

Appellant's Brief at 1.

Booker challenges the PCRA court's order dismissing his PCRA petition. Our review of such an order is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. **See Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). We give great deference to the factual findings of the PCRA court, and we are bound by the PCRA court's factual findings and credibility determinations if they are supported by the record. **See id**.; **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020). As for the PCRA court's legal conclusions, we apply a *de novo* standard of review. **See Small**, 238 A.3d at 1280.

Booker first claims the PCRA court erred by concluding there was no agreement between the Commonwealth and Warren that the Commonwealth

would forego seeking the second-strike mandatory sentence against Warren in exchange for his testimony, and therefore that the Commonwealth did not violate **Brady** by failing to disclose any such agreement to Booker. We disagree.

As the PCRA court pointed out, a **Brady** claim "is cognizable on collateral appeal under the PCRA." Trial Court Opinion, 8/24/2023, at 7 (*quoting* **Commonwealth v. Simpson**, 66 A.3d 253, 264 n.16 (Pa. 2013)). **Brady** held that the prosecution's failure to give a defendant material, exculpatory evidence in its possession violates the defendant's due process rights. **See Simpson**, 66 A.3d at 264. "To demonstrate a **Brady** violation, [an appellant] must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment." **Id.**

Here, in finding that the Commonwealth had not concealed any agreement and Booker had therefore failed to demonstrate a violation of **Brady**, the PCRA court cogently explained:

> There is ample support in the record to support this Court's factual finding that no agreement, written or unwritten, existed between the Commonwealth and [ ] Warren for [ ] Warren to testify at [Booker's] trial in exchange for his second-strike mandatory sentence being waived. [Attorney] Leonardis confirmed that while employed by the Philadelphia District Attorney's Office, she authored an internal sentencing memo related to [ ] Warren dated July 3, 2015, which stated that there were no negotiations for [ ] Warren's sentencing but that the mandatory second-strike sentence was "off the table."

[Attorney] Leonardis explained that this referred to an internal decision by the Commonwealth to not pursue the mandatory sentence, meaning it therefore did not refer to any direct agreement between the Commonwealth and [ ] Warren himself. This type of internal decision was consistent with procedures that Angel Flores described as the practice of the Philadelphia District Attorney's Office at the time.

[Attorney] Leonardis testified that she was never informed about any such agreement between the Commonwealth and [ ] Warren. She inherited [ ] Warren's case from Ashley Lynam, who denied ever reaching an agreement with [ ] Warren's counsel, Glenn Gilman, to waive [ ] Warren's second-strike status in return for his testimony against [Booker]. [Attorney] Lynam specifically stated that any such agreement would have been reduced to writing and vehemently denied the possibility that she would have entered into an unwritten side agreement with [Attorney] Gilman.

Amanda Hedrick, who ultimately represented the Commonwealth at [Booker's] trial and the sentencings for [Booker] and [ ] Warren, similarly testified that she was not aware of any prior agreement between the Commonwealth and [ ] Warren to waive his second strike, nor did she ever secure any such agreement herself. Her reference to an agreement at [ ] Warren's sentencing hearing was most likely based on the language included in the internal sentencing memo that the mandatory second-strike sentence against [ ] Warren was "off the table."

This Court found the testimony given by the Commonwealth's witnesses – [Attorneys] Angel Flores, Ashley Lynam, Jennifer Leonardis, and Amanda Hedrick – was credible. Witnesses who were directly involved in [ ] Warren's case consistently testified that the Commonwealth made no agreement, written or otherwise, with [ ] Warren for him to testify at [Booker's] trial in exchange for the second-strike mandatory sentence being waived.

None of the Commonwealth's file markings indicated the existence of any such agreement. [ ] Warren himself also denied the existence of an agreement when he testified at [Booker's] trial and later at his own sentencing hearing.

This Court weighed this evidence against [Attorney] Gilman's recollection that he had formed a verbal agreement with Ashley Lynam that was to be communicated to subsequent prosecutors handling [ ] Warren's case. While such a verbal agreement was consistent with the practices described by rebuttal witness Anne Fisher, this Court nonetheless found it implausible that any defense attorney would risk his client receiving a mandatory sentence on the basis of such a tenuous agreement. Furthermore, this Court found it notable that [Attorney] Gilman never represented to this Court that a verbal agreement was in place with the Commonwealth. …

Based on the above-described evidence presented at [Booker's] PCRA evidentiary hearing, this Court correctly concluded that no agreement, written or unwritten, existed between the Commonwealth and [ ] Warren.

Trial Court Opinion, 8/24/2023, at 19-21 (some single paragraphs in original divided into two paragraphs). Therefore, the PCRA court found the Commonwealth did not conceal evidence as there was no agreement to conceal, and Booker had failed to establish the first prong of the **Brady** test. **See id.** at 21.

We discern no error in the court's conclusion. Its determination that there was no agreement in place is based on factual findings and explicit credibility determinations that are supported by the record. We are therefore bound by those findings. **See Johnson,** 966 A.2d at 532; **Small**, 238 A.3d at 1280.

Given the court's finding that no agreement existed, we find no legal error in its conclusion that Booker therefore failed to establish the Commonwealth violated **Brady**.

In urging us to reach the opposite conclusion, Booker first argues the PCRA court was laboring under the "mistake of law" that unwritten cooperation agreements never exist when, in reality, they are "a regular feature of the criminal justice system." Appellant's Brief at 20. As explained below, we find this claim is without merit.

Here, the PCRA court specifically acknowledged Attorney Fisher's representation that verbal agreements between defendants and the Commonwealth do exist. **See** Trial Court Opinion, 8/24/2023, at 20, N.T., 3/30/2023, at 11. Notwithstanding this testimony, the court nonetheless credited the former ADAs' testimony that no such agreement existed here. At the same time, it discredited Attorney Gilman's assertion that he had made an agreement with the Commonwealth to waive Warren's second-strike status at sentencing in exchange for Warren's testimony without reducing such a high-stakes agreement to writing. **See** N.T., 3/30/2023, at 11. These were credibility determinations the PCRA was entitled to make. And, because they are supported by the record, we are bound by them. **See Johnson**, 966 A.2d at 538 (stating it is within the province of the PCRA court to pass on witness credibility and the appellate court is bound by those credibility determinations when supported by the record).

Despite the deference the PCRA court's credibility determinations are entitled to, Booker essentially argues the PCRA court should have credited the testimony of Attorney Gilman that he had made a verbal agreement with the

- 14 -

Commonwealth regarding Warren's second-strike status because he had no reason to lie. Booker also argues the PCRA court should not have credited the testimony of the Commonwealth's witnesses because they were motivated to hide the existence of a verbal agreement.

In essence, Booker is asking this Court to ignore the credibility determinations made by the PCRA court, which we find are supported by the record, and replace them with our own. Of course, this request to substitute the PCRA court's credibility determinations with our own is not compatible with our applicable standard of review. Instead, we find the record supports the PCRA court's finding that there was no agreement for the Commonwealth to conceal, and in turn, we conclude there was no error in the PCRA court's conclusion that no **_Brady_** violation occurred. As such, Booker's first claim does not entitle him to any relief.

In his second claim, Booker argues the PCRA court erred by finding that even if it determined that there had been an agreement, the Commonwealth still had not violated **_Brady_** because Booker failed to establish he had been prejudiced. As the PCRA court indicated, because it had already found there was no **_Brady_** violation on the basis of its finding that there had not been an agreement to conceal, the court did not need to reach the issue of prejudice. However, the PCRA court added that it nonetheless agreed with the Commonwealth that Booker's **_Brady_** claim would also fail because of his failure to establish he had been prejudiced.

There is no need for us to address this issue for the same reason given by the PCRA court. We have already concluded the PCRA court did not err in finding no agreement existed, and therefore no **Brady** violation occurred. It would be pure speculation for this Court to review a prejudice argument when we have concluded that the PCRA court should be affirmed on finding that no **Brady** violation occurred.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2024