J-S40021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RAYMOND TAYLOR :
:
Appellant : No. 144 MDA 2025

Appeal from the PCRA Order Entered December 17, 2024
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0000551-2020

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:            **FILED JANUARY 08, 2026**

Raymond Taylor appeals from the order entered in the Lackawanna County Court of Common Pleas on December 17, 2024, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Taylor raises claims of ineffective assistance of trial counsel. For the reasons discussed below, we find the PCRA court properly denied relief and affirm.

We previously provided the factual history of this case, as summarized by the trial court, on direct appeal as follows:

> In December [of] 2019, [Taylor] was babysitting C.R., who was his fiancé's cousin's four-year-old daughter. He babysat her in his home while her parents were at work. Soon thereafter, C.R. was sitting on her father's ... lap, when she grabbed his genitals. He thought she was going to try and put her mouth on his penis. [He] told his wife about the incident. They had a conversation with [C.R.] during which C.R. stated, "Uncle Ray sticks his cock in my mouth." [C.R.'s parents] were both shocked by the statement.

[C.R.] subsequently made similar statements to her [paternal] grandfather.... At that point, [C.R.] was taken to the Children's Advocacy Center ("CAC") where she made a similar disclosure.

Due to the above allegations, on December 18, 2019, [Taylor] appeared at the Carbondale Police Department at the request of Detective Timothy Mackrell. Detective Mackrell began the interview by advising [Appellant] of his *Miranda* rights. The first part of the videotaped interview lasted approximately one hour and nine minutes. In the first part of the interview, [Taylor] denied the allegations. He agreed to take a Computer Voice Stress Analysis test ("CVSA"). The pre-CVSA interview, the CVSA, and the post-CVSA interviews were conducted by Detective Jess Van Deusen of the Carbondale Police Department. This portion was not videotaped and lasted approximately one hour and ten minutes. The detectives then informed [Appellant] that he failed the exam. Detective Mackrell resumed questioning [Appellant] for approximately thirty minutes. During this portion of the unrecorded interview, [Appellant] confessed. Detective Mackrell requested that [Appellant] repeat his admission statement on videotape. The detective had trouble turning the recorder back on, so he enlisted the help of two other Carbondale Police Officers, along with [Appellant] himself. [Appellant] then repeated his admission on tape in a recording that lasted one minute and eighteen seconds long.

On or about December 18, 2019, [Taylor] was arrested for rape and related offenses.

***Commonwealth v. Taylor***, 277 A.3d 577, 582-84 (Pa. Super. 2022)

(citations omitted).

Just prior to trial, the Commonwealth filed an amended information, charging Taylor with rape of a child, involuntary deviate sexual intercourse with a child, statutory sexual assault, unlawful contact with a minor, sexual

assault, endangering the welfare of a child, and corruption of minors.[1] On December 9, 2020, after a three-day jury trial, the jury returned a verdict of guilty on all counts.

On April 22, 2021, the trial court sentenced Taylor to an aggregate term of 18 to 36 years' incarceration. Additionally, Taylor was ordered to register as a Tier III lifetime registrant pursuant to 42 Pa.C.S.A. § 9799.10 *et seq.* After receiving an extension of time to file a post-sentence motion, Taylor filed a post-sentence motion, which the trial court denied on August 10, 2021, following a hearing. We affirmed the judgment of sentence on direct appeal. *See Commonwealth v. Taylor*, 277 A.3d 577 (Pa. Super. 2022).

On May 31, 2023, Taylor filed a counseled PCRA petition, raising multiple claims of ineffective assistance of trial counsel. On June 13, 2023, the Commonwealth filed a motion to dismiss the petition. After the court granted Taylor's motion to file an amended PCRA petition, Taylor filed a first amended PCRA petition on July 11, 2023. The Commonwealth filed a brief in response.

On September 19, 2023, following a hearing the prior day, the PCRA court issued notice of its intent to dismiss the PCRA petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907, based on Taylor's failure to satisfy the initial threshold meriting an evidentiary hearing pursuant to

---

[1] 18 Pa.C.S.A. 3121(c); 18 Pa.C.S.A. 3123(b); 18 Pa.C.S.A. 3122.1(b); 18 Pa.C.S.A. 6318(a-1); 18 Pa.C.S.A. 3124.1; 18 Pa.C.S.A. 4304(a)(1); 18 Pa.C.S.A. 6301(a)(1).

Pa.R.Crim.P. 902(A)(12)-(13). However, the court gave Taylor 20 days to file a second amended PCRA petition.

On October 10, 2023, Taylor filed a second amended PCRA petition. Following the Commonwealth's response, evidentiary hearings were held on May 9, 2024 and May 17, 2024. Following the hearings, the parties submitted briefs at the courts direction. On December 17, 2024, the court entered a memorandum and order denying the PCRA petition. This timely appeal followed.

On appeal, Taylor argues the PCRA court erred in denying his claims that trial counsel provided ineffective assistance for failing to (1) interview and/or call three witnesses who lived in the residence where the alleged assault occurred to testify at trial; and (2) seek to suppress Taylor's confession since his confession was not knowingly and voluntarily given but was the result of promises of benefits and special considerations amounting to improper persuasion and trickery. ***See*** Appellant's Brief, at 2-3.

> Our scope and standard of review is well-settled:
>
> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes–Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) (internal citations and quotation marks omitted).

We presume counsel is effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Commonwealth v. Kimball*, 724 A.2d 326, 330-332 (Pa. 1999). An appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *See id*., at 1163. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1044 (Pa. Super. 2019) (citation omitted).

Taylor's first issue challenging trial counsel's assistance argues that trial counsel was ineffective for failing to interview or call three fact witnesses who lived in the same residence where the offenses allegedly occurred. *See* Appellant's Brief, at 16.

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must prove: "(1) the witness existed; (2) the witness

was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." ***Commonwealth v. Johnson***, 966 A.2d 523, 536 (Pa. 2009) (citation omitted). Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense. ***See Commonwealth v. Chmiel***, 889 A.2d 501, 546 (Pa. 2005). An appellant must demonstrate how the testimony of the uncalled witness would have been beneficial under the circumstances of the case. ***See id***.

The three potential witnesses, Carmine Torre, Joseph Martin, and Timothy Fisher, testified at the PCRA hearing. The PCRA court succinctly summarized their testimony as follows:

> Carmine Torre testified that he is currently 21 years old, and that in 2018 and 2019 he was a high school student. He testified that in 2018 and 2019, he lived at his current address, 38 Laurel St., Carbondale, with his mother; [Taylor], who is his stepdad; his mother's brother, Timothy Fisher; and a friend of his named Joseph Martin. He testified that in 2018 and 2019, C.R. would be dropped off at the house during the day, and while he would go to school on those days and his mother would go to work, [Taylor], Mr. Fisher and Mr. Martin would be at the house. He testified that he did not ever see [Taylor] alone with C.R. and did not see him take C.R. to the bathroom, and that if she had to use the bathroom, his uncle, Timothy Fisher, would take her. He testified that he was in the courtroom during the trial, and overheard his mother tell counsel that he was available as a witness. He testified that he was not aware of any time that [Taylor] would have had an opportunity to touch C.R. while he was home, and that her

- 6 -

attitude toward [Taylor] never changed. He testified that sometimes he would see C.R. being dropped off in the morning when he was leaving for school. On cross-examination, Mr. Torre testified that in 2018 and 2019, he was a full-time student, and that he would be gone from the house from 7:30 a.m. until 3:30 p.m. each weekday, and that C.R. came to the house five days a week from 7:30 a.m. until 3:30 p.m. He testified that she was at the house eight hours a day, and that he was not there during that time, and that he does not know what went on at the house when he was not there. He testified that he does not know if [Taylor] and C.R. were ever alone together or if [Taylor] ever took C.R. to the bathroom. He testified that there were numerous days when C.R. and [Taylor] were at the house and he was not. He testified that if C.R. had said that [Taylor] took her to the bathroom on a day that Mr. Torre was at the house, that would not be true because he never saw [Taylor] take her to the bathroom, but he also testified that there were days that C.R. got to the house before he left for school, and that she would have seen him at the house before he left for eight hours.

Joseph Martin testified that he is 24 years old, and also lives at 38 Laurel St., Carbondale. He testified that he is [Taylor]'s nephew, and that he graduated from high school in June of 2019. He testified that when he was at home, he saw Tim Fisher take C.R. to the bathroom and never saw [Taylor] take her to bathroom. He testified that he came to the courthouse every day of the trial, and trial counsel never interviewed him. On cross-examination, he testified that before he graduated in June of 2019, he went to school every weekday, and he left the house at 7:30 and returned to the house at 3:30. He testified that C.R. was at the house those days and [Taylor] was also at the house. He testified that after he graduated in June of 2019, he was at the house every day, and he never left the house when C.R. was there. He testified that [Taylor] would get C.R. when she was dropped off each morning and bring her upstairs to Timothy Fisher's bedroom.

Timothy Fisher testified that he is 42 years old and has schizoaffective disorder. He testified that he also lives at 38 Laurel Street, Carbondale. Id. He testified that he did have a conversation with trial counsel about what was going on in the house in 2019, and where he was and what he did, and that he attended the trial in this case. He testified that in 2018 and 2019, when C.R. would come to the house at 7:30 a.m., she would be brought to his room and put in the bassinet, and he would bring

- 7 -

her down at about 11:00 and feed her lunch and put cartoons on for her. He testified that he always brought her to the bathroom and [Taylor] never did. He testified that there were times that C.R. was at the house when he was not. On cross-examination, he testified that once every two weeks, he would leave the house to meet his nephew, and that [Taylor] would be at the house. He testified that he cannot say what went on in the house when he was not there.

PCRA Court Opinion, 12/17/24, at 5-7 (record citations omitted). The PCRA court further thoroughly summarized the testimony of trial counsel on this issue:

Finally, trial counsel, [] also testified at the PCRA hearing concerning these potential witnesses. He testified that he was aware of the three individuals and that some of them were in the house when the offense allegedly occurred and that they were around during the trial. He testified that he did not interview them. He testified that because there was not a date and time of the assault, but rather that it was generally alleged that it took place in 2019, it was not helpful to have testimony from someone that they were generally around and did not see something happen. He testified that C.R. never testified that someone else was right there when the assault occurred, and under his trial strategy, testimony that someone did not see anything when the allegation is that C.R. and [Taylor] were alone in the bathroom, is not given much weight. He testified that during meetings and phone calls with [Taylor] before trial, [Taylor] did ask whether these witnesses would be called, and that he told [Taylor] that he did not think it would be necessary to call them based on the strategy they had. He testified that the testimony from Mr. Torre and Mr. Fisher that they were gone from the house for large portions of time, on a routine basis, and that [Taylr] was alone at the house with C.R., was not beneficial to his trial strategy. He testified that such testimony would be beneficial to the Commonwealth because it would show the jury that there were times when [Taylor] and C.R. were alone in the house together.

*Id.* at 7-8 (record citations omitted).

The PCRA court credited trial counsel's testimony that testimony from these witnesses did not fit within his trial strategy and would not have been beneficial to Taylor's case. **See id.** at 9-10. We cannot disturb the PCRA court's determination. **See Commonwealth v. Battle**, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court). The PCRA court further concluded that the testimony of these potential witnesses at the PCRA hearing "confirmed that their trial testimony would not have been beneficial since all three testified that [Taylor] was never alone with the child and never took her to the bathroom, but then also testified that there were periods of time when they were not in the house and they do not know what took place when they were not there." PCRA Court Opinion, 12/17/24, at 9 (record citation omitted).

Our review of the record supports the PCRA court's conclusions. The PCRA did not err in concluding trial counsel had a reasonable basis for deciding not to call these three witnesses. Accordingly, counsel was not ineffective for failing to call these witnesses.

In his second and final issue raised on appeal, Taylor argues trial counsel was ineffective for failing to pursue the suppression of his confession to police. Taylor asserts his confession was not voluntarily given because he clearly did not understand his **Miranda** rights as given to him, **see** Appellant's Brief, at 28-29, the officers would not allow his fiancée in the room, **see id.** at 29-30,

and that he was misled to confess by threats and promises of leniency from the interviewing officer. *See id.* at 30-31.

"[When] an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." *Commonwealth v. Jones*, 942 A.2d 903, 909 (Pa. Super. 2008) (citation omitted).

Here, the PCRA court summarized trial counsel's testimony from the PCRA evidentiary hearing on this issue as follows:

> [Trial counsel] testified at the PCRA hearing that he did not seek suppression of [Taylor]'s statement to the police due to leniency being offered, or due to his fiancee not being allowed into the interview, because those were not reasons that popped to the forefront in challenging the statement, and because [Taylor] did not necessarily have a right to have someone in the room with him for the interview. He also testified that there was extensive argument about whether [Taylor]'s statement to the police was admissible and the parameters that would be placed on it at trial, and he objected to the admissibility of the statement, but had to stay within the court's ruling. He testified that [Taylor] was offered leniency in this case, in the form of a plea offer, so he could not argue for suppression of the statement due to the failure of the Commonwealth to provide leniency. He testified that because [Taylor] is over 18 and was not mentally incapacitated or deficient, he could not argue for suppression of the statement because [Taylor] was not allowed to have his fiancee in the room with him.

PCRA Court Opinion, 12/17/24, at 18 (record citations omitted).

Based on this testimony, the PCRA court concluded Taylor did not establish his claim of ineffectiveness:

Here, [trial counsel] testified at the PCRA hearing that he did not file a suppression motion challenging [Taylor]'s statement to police based on the offer of leniency during the police interview or the failure to allow [Taylor]'s fiancee to attend the interview because these arguments did not have merit. He did seek exclusion of the videotaped interview and confession at the time of trial, and after extensive argument, the court did place parameters on what parts of the video could be played for the jury, and what [trial] counsel could assert concerning the portions of the interview that were not shown to the jury and not videotaped at all. [Trial counsel] did argue at trial that [Taylor] was coerced to confess, since he had denied the allegations for the first three and a half hours of the interview with the police, but abruptly changed his mind and confessed, and he argued that [Taylor] only confessed because he was threatened with going to jail and being thrown into general population. And [Taylor] did testify at trial that he was threatened by Officer Mackrell with being put in general population.

[The trial] court agrees that there were not meritorious issues to raise in a motion to suppress [Taylor]'s confession. Officer Mackrell testified that [Taylor] voluntarily came to the police station to speak with them, and that he sat [Taylor] next to the door in an office instead of an interrogation room. He testified that [Taylor] was given [*Miranda*] warnings and waived his rights, and was told that he was free to leave. He testified that [Taylor] was given a number of breaks. He testified that the tone of the interview was cordial, and while he admitted that it did get heated at times and he told [Taylor] that he knew he did this and it wasn't going away, he never threatened [Taylor] and did not threaten to put him in general population. Moreover, [Taylor] was at the police station for less than three hours before he confessed. While the police did not allow [Taylor] to bring his fiancee into the interview with him, this was not grounds for a suppression motion since, as [trial counsel] testified, [Taylor] is a competent adult. And while Officer Mackrell testified that he told [Taylor] that he would stand up for him and tell the judge that [Taylor] took responsibility if he was looking for sympathy, this did not amount to a promise of leniency. None of the police tactics here amounted to coercion that would warrant suppression of [Taylor]'s statement. [Trial c]ounsel had a reasonable basis for not filing a motion to suppress the confession, particularly because there were not meritorious grounds for the motion, and he was not ineffective here.

*Id.* at 20-21 (record citations omitted).

Our review of the record supports the PCRA court's conclusions. The PCRA court credited trial counsel's testimony that a suppression motion would not have been successful. We see no reason to disturb the PCRA court's determination. **See Battle**, 883 A.2d at 648. As Taylor has not shown that his confession was involuntary, we cannot find trial counsel erred by failing to file a motion to suppress the confession. There were simply no grounds upon which to base a suppression motion. It is well settled that "counsel cannot be deemed ineffective for failing to raise a meritless claim." **Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citation omitted).

In conclusion, we have reviewed the record, including the notes of testimony from the PCRA hearing, and agree with the PCRA court that Taylor's ineffectiveness claims are without merit. We therefore affirm the PCRA court's denial of Taylor's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/08/2026